**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JAMES T. MURZIKE,

        Plaintiff,

v.                                                                  Case No. 3:23-cv-98-WWB-PDB

RONNIE WEEMS, et al.,

        Defendants.
_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on the following motions: the Nurse Defendants' Motion for Summary Judgment (Doc. 141), with exhibits (Doc. Nos. 141-2 to 141-15, 143); the Officer Defendants' Motion for Summary Judgment (Doc. 142), with exhibits (Doc. Nos. 142-1 to 142-3, 143);[1] and Plaintiff's Motion for Summary Judgment (Doc. 144), without exhibits. Defendants have not responded to Plaintiff's Motion. Plaintiff has responded only to the Officer Defendants' Motion (Doc. 161), but he filed it late without seeking leave of Court. As such, the Court will strike it.[2]

---

[1] The Officer Defendants submitted video evidence under seal in support of their Motion (Doc. 143). The Nurse Defendants rely on the same video evidence. (*See* Doc. 141 at 3). Except for the video evidence, all exhibits will be cited by document and page number as assigned by the Court's electronic docketing system. The video evidence, which consists of three separate clips on one thumb drive, will be cited according to the Officer Defendants' exhibit designation (D, E, or F) followed by the time stamp.

[2] Even if the Court were to consider Plaintiff's late response, it would not help him. He adds new allegations or attempts to revive claims previously dismissed or not pursued in his Amended Complaint, some of his writing is indecipherable, and he filed no exhibits with it. Rather, he relies on the evidence Defendants filed with their Motions, and that evidence contradicts his claims. In a separate filing, which Plaintiff mailed four days after he mailed the response, Plaintiff contends that he "had medical documents" to support his alleged injuries, but security officials destroyed them (Doc. 162). As with most of

## I.      BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections, is proceeding pro so

on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 20)

on the following claims arising out of an organized use of force that occurred on December

22, 2022: excessive force or failure to intervene against Officer Defendants Weems, Bias,

Taylor, Green, and Mattox; retaliation against Defendant Weems; deliberate indifference

to serious medical needs against Nurse Defendants Cummings and Putney; and failure

to intervene against Nurse Defendants Cummings, Putney, Allen, and Kushner.   The

allegations supporting these claims are fully set forth in this Court's August 18, 2025 Order

on Defendants' separate Motions to Dismiss:[3]

> [As to the Officer Defendants, Plaintiff] . . . alleges Defendants Weems,
> Bias, and Talyor hit him, grabbed him, cut him, or unnecessarily sprayed
> him with chemical agents "maliciously [and] sadistically to cause [him] harm
> when [he] was not violating any prison rule []or . . . acting disruptively."
>
> Specifically, Plaintiff alleges that Defendant Taylor unnecessarily sprayed
> him with chemical agents twice, including one time "continuously," causing
> second or third degree burns, while Defendant Weems "repeatedly
> slammed [and] smash[ed his] arm [and] shoulder into [the] cell door";
> Defendant Bias stabbed him with a "switch blade"; and Defendants Bryan,
> Green, and Mattox (along with the Nurse Defendants) "stood by [and]
> watched."   Additionally, he alleges that when he was in the medical exam
> room, Defendants Green and Bias "repeatedly punch[ed him] in [his] side,
> ribs, [and] stomach," while Defendant Cummings watched.
>
> *       *       *
>
> [As to the Nurse Defendants, Plaintiff] asserts his arm was cut so badly that
> he had "tissues [and] meat . . . hang[ing] out while gushing out blood," and

---

Plaintiff' filings, this notice is not a proper motion, it is largely illegible, it contains
conclusory, unsupported allegations, and in it, Plaintiff complains about other conduct
unrelated to the issues in this case.

[3] In that Order, the Court dismissed numerous claims, substantially narrowing the
issues before the Court now.  (*See* Doc. 103 at 19).

2

even after having had a decontamination shower, he had second- or third-degree burns that were not treated [by Defendants Cummings and Putney].

(Doc. 103 at 8–9, 12).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law."  *Id.*  "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007).  Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) … requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation omitted).  The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts."  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).  Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor."  *Allen*, 495 F.3d at 1314.

3

III.    **DISCUSSION**

### A. Plaintiff's Motion

Plaintiff's Motion is not proper under Federal Rule of Civil Procedure 56.  It reads like both a response to a motion to dismiss (referencing Rule 8(a)(2) and using the failure-to-state-a-claim language) and a motion to compel (including a list of discovery requests to which Defendants "fail[ed] to act or respond").[4]  (*See* Doc. 144 at 3–4).  More importantly, however, Plaintiff does not demonstrate by reference to "particular parts of materials in the record" that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(A).  Indeed, he provides no evidence supporting his Motion but rather relies on Defendants' evidence, which justifies summary judgment in their favor, as explained below.  (*See* Doc. 144 at 7).  To the extent Plaintiff intended his Motion to be one for summary judgment under Rule 56, he has not carried his burden.  *See* Fed. R. Civ. P. 56(c)(A).  Accordingly, Plaintiff's Motion will be denied.

### B. Nurse Defendants' Motion

First, for reasons explained later in this Order, the Court concludes the uncontroverted video evidence shows that no Officer Defendant used excessive force against Plaintiff.  As such, any claim that the Nurse Defendants failed to intervene necessarily fails.  Second, the Court concluded at the motion-to-dismiss stage that Plaintiff's deliberate indifference claims against the Nurse Defendants could proceed only

---

[4] Plaintiff was afforded an opportunity to engage in discovery, and the Court provided him with citations to relevant Rules and resources for doing so.  (*See* Doc. 108). Pro se litigants are not excused from complying with the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

because the Court had to accept as true Plaintiff's hyperbolic allegations that he had serious medical needs that were not treated (*i.e.*, "tissues [and] meat . . . hang[ing] out while gushing out blood," and second- or third-degree burns from the chemical agents). (*See* Doc. 103 at 12).  At this juncture, the Court no longer must accept these allegations as true, and the clear, reliable video evidence shows Plaintiff sustained no such injuries. (*See* Def. Ex. D, 42:15–42:49, 12:30–12:45; *see also generally* Def. Ex. E).  The contemporaneous medical records align with the video evidence.  Defendant Cummings conducted the post-use-of-force exam and noted Plaintiff presented with only two scratches to his left forearm, which Defendant Cummings cleansed with Hydrogen Peroxide.  (*See* Doc. 141-2 at 2–3).[5]  Plaintiff had a mental health screening five days after the incident at which he asked the provider (Defendant Kushner) to "document" marks on his left arm that Plaintiff claimed were burns from the chemical agents.  (*See* Doc. 141-4 at 1).  No burns were diagnosed by any medical provider.

Plaintiff's minor scratches, which did not require stitches, do not constitute a serious medical need.  *See Youmans v. Gagnon*, 626 F.3d 557, 565–66 (11th Cir. 2010); *see also Arce v. Okaloosa Cnty. Dep't of Corr.*, No. 3:24CV304, 2024 WL 5359938, at *2 (N.D. Fla. Sept. 20, 2024) ("It is well settled that '[c]uts and bruises that require only minor treatment are not a serious medical need for purposes of [deliberate indifference] claims.'" (alterations in original)), *report and recommendation adopted*, 2025 WL 308106 (Jan. 27, 2025).  Regardless, Defendant Cummings—the only Nurse Defendant who examined Plaintiff that day—treated Plaintiff's injuries.  (*See* Doc. 141-2 at 3).  Defendant Cummings

---

[5] Defendant Putney was not involved in the treatment of Plaintiff's scratches but merely reviewed and signed off on Defendant Cummings's medical note.  (*See* Doc. 141-2 at 4).

noted that Plaintiff "[t]olerated [the treatment] [w]ell," (*id.*), and Plaintiff offers no evidence showing that his scratches required additional treatment that was not provided, such as stitches. *See Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 513 (11th Cir. 2010)[6] (holding the plaintiff failed to allege he had a serious medical need where he bled for only five minutes and had no open wounds that required stitches).

Plaintiff provides no documentation contradicting Defendants' evidence, and he may not rely on the allegations in his Amended Complaint to overcome summary judgment. *See Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"); *see also Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984) ("The party [opposing a motion] for summary judgment cannot rest on his pleadings to present an issue of fact . . . .").

The Nurse Defendants carry their burden demonstrating there is no genuine issue of material fact for trial, and Plaintiff does not go beyond the pleadings to show the opposite, nor does he "show[] that the materials cited [by the Nurse Defendants] do not establish the absence . . . of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1). As such, the Nurse Defendants' Motion will be granted.

---

[6] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

### C. Officer Defendants' Motion

The Officer Defendants argue Plaintiff fails to demonstrate Defendant Weems retaliated against him, and they invoke qualified immunity on the excessive-force and failure-to-intervene claims.

### i. Retaliation

A successful retaliation claim requires a plaintiff to demonstrate (1) he engaged in "constitutionally protected" speech, (2) he "suffered adverse action" because of that speech, and (3) a causal connection between the speech and the adverse action. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). The "adverse action" element hinges not on whether the plaintiff's own First Amendment rights were "chilled," but rather whether the "allegedly retaliatory conduct would likely deter a person of ordinary firmness" from exercising his First Amendment speech rights. *Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007). The "causation" element requires a showing that "the defendants were subjectively motivated to discipline" the plaintiff because of the protected activity. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). The "motive" inquiry is subject to a "burden-shifting framework." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Under that framework, the plaintiff first "must show that his constitutionally-protected speech was a 'motivating factor' in [the defendant's] decisions to carry out the adverse actions." *Id.* The burden then shifts to the defendant who "must show that he would have implemented those adverse actions irrespective of [the plaintiff's] complaints." *Id.*

As mentioned, Plaintiff provides no evidence supporting his claims. For instance, he does not provide any grievances in which he complained about Defendant Weems

7

near the time of the incident, and he may not rely solely on the vague allegations in his Amended Complaint.   Not only does Plaintiff not demonstrate he engaged in constitutionally protected speech, but even if he had, he offers no evidence showing that his constitutionally protected speech was a motivating factor in the decision to carry out the use of force.  On the other hand, Defendants demonstrate they would have taken the same adverse action in the absence of Plaintiff having written grievances.  According to use-of-force reports, Defendant Weems requested an organized force response to gain Plaintiff's compliance when Plaintiff refused to submit to restraint procedures for a cell search.  (*See* Doc. 142-3 at 8).  That request was approved by Colonel Jeffery Lindsey and carried out by Defendant Taylor.  (*Id.* at 8, 11–12, 20).

Finally, assuming arguendo that Defendant Weems may have subjectively been motivated to discipline Plaintiff for writing grievances, Defendant Weems was not the officer who approved or carried out the use of force.  Thus, any causal connection between Defendant Weems's allegedly retaliatory motive and the adverse action was broken.  *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011) (holding the plaintiff failed to state a plausible retaliation claim because a prison official other than one with the alleged retaliatory motive "determined or confirmed" that the plaintiff should incur a disciplinary report).[7]  Thus, Defendant Weems is entitled to summary judgment on the retaliation claim.

---

[7] Also of note, Plaintiff did not respond to the Officer Defendants' Requests for Admissions, which asked Plaintiff in relevant part the following: "Admit that as a result [of you failing to comply with orders to submit to handcuffs,] Defendant Taylor administered the authorized chemical spray to bring you into compliance"; and "Admit that none of the Defendants threatened you on December 22, 2022." (*See* Doc. 142-1 at 2, 4).  Plaintiff's failure to respond to Defendants' properly served Requests for Admissions results in the requests being admitted.  *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within

### ii.      Excessive Force & Failure to Intervene

"In order to receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). There is no dispute that the Officer Defendants were acting within their discretionary duties at the time of the incident. Where, as here, it is undisputed that Defendants were acting within the scope of their discretionary authority, the burden shifts to Plaintiff to prove that Defendants "(1) violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Plaintiff must satisfy both prongs to survive a qualified-immunity defense. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). And the Eleventh Circuit has "long recognized that 'an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" *Nute v. White*, 152 F.4th 1311, 1319 (11th Cir. 2025). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and

---

30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection."). Additionally, Plaintiff's suggestion that Defendant Weems orchestrated the incident specifically to justify spraying him with chemical agents to discipline him strains credulity since the chemical agents caused the nearby officers—including Weems—to suffer the side effects as well. (*See, e.g.*, Def. Ex. D, 21:00, 24:00–25:35).

staff, may use force when necessary. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991).

For instance, officers may use chemical agents to quell a disturbance so long as a valid penological reason supports its use and it is not used in "quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1310 (11th Cir. 2010) ("[T]he use of chemical agents on recalcitrant prisoners is not per se unconstitutional." (quoting in part *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984))); *see also Sconiers v. Lockhart*, 946 F.3d 1256, 1264 (11th Cir. 2020) (acknowledging "pepper-spray" may be used to subdue an inmate when penologically necessary); *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates.").

Regardless of the type of force employed, whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to others, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. *See Williams*, 943 F.2d at 1575; *Whitley*, 475 U.S. at 321; *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). A prisoner's lack of an injury is not dispositive but can be "evidence of the kind or degree of force that was used by [an] officer." *Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) (citing *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021)).

In applying the *Whitley* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). A prisoner against whom force is used to restore order demonstrates an Eighth Amendment violation "*only* if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" *Williams*, 943 F.2d at 1575. Corrections officials are not required to "convince every inmate that their orders are reasonable and well-thought out," and "[c]ertainly . . . are not required to do so where an inmate repeatedly fails to follow those orders." *Danley*, 540 F.3d at 1307. As such, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. A case should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.*

Upon review of the evidence and affording Defendants "a wide range of deference" in maintaining prison security, the Court concludes the *Whitley* factors balance in their favor. *See Cockrell*, 510 F.3d at 1311. First, there was a documented need to use force because Plaintiff disobeyed orders to submit to restraints for a cell search. (*See* Doc. 142-3 at 8, 11, 20). Before administering the first round of chemical agents, Defendant Weems gave Plaintiff two opportunities to submit to restraint procedures, and he refused. (*See* Def. Ex. D, 2:07–2:30, 6:14–6:32). Defendant Weems attempted to gain Plaintiff's compliance again before administering the second round of chemical agents, and Plaintiff again refused. (*Id.*, 15:08–15:20). Second, the type and amount of force used was

11

minimal, consisting of two rounds of chemical agents, which Plaintiff attempted to block with his food tray. (*See* Doc. 142-3 at 11, 13; *see also* Def. Ex. D, 7:43–7:58, 15:30–15:39). Third, the Court accepts that Plaintiff presented a threat of harm to others through his "disruptive behavior." (*See* Doc. 142-3 at 8, 11). Indeed, he used his food tray not only to block the chemical agents from entering his cell but also to prevent officers from closing his cell door, which could have created additional security concerns and shows his noncompliance. (*See id.* at 11, 13; *see also* Def. Ex. D, 8:00–8:10, 15:34–15:49).

Fourth, Defendants tried to temper the severity of a forceful response in the following ways: giving Plaintiff multiple warnings; attempting to "deescalate the situation" by using CIT ("crisis intervention techniques") to counsel Plaintiff beforehand; checking with medical personnel to ensure chemical agents could safely be utilized; giving Plaintiff plenty of time and multiple opportunities to comply; allowing Plaintiff to wash the chemical agents off his body immediately after he exited his cell; and having a nurse assess and treat any injuries. (*See* Doc. 142-3 at 11–12; *see also* Def. Ex. D, 0:20–1:05, 30:25–35:09; Def. Ex. E, 2:10–12:25).

Finally, as previously discussed, Plaintiff sustained only minor injuries, which likely were due to his own actions. (*See* Doc. 142-3 at 22; *see also* Def. Ex. D, 42:15–42:49, 12:30–12:45). There is no evidence whatsoever that Plaintiff sustained any of the serious injuries he claimed in his Amended Complaint to have sustained: "deep gashes in left arm"; severe burns; cuts and scratches on his back; lower back pain; swelling; blurry vision; large lump on the head; etc. (*See* Doc. 20 at 12). Moreover, the evidence blatantly contradicts his allegation that he was "denied all medical care." (*See id.*). "When opposing parties tell two different stories, one of which is blatantly contradicted by the

12

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The video evidence also blatantly contradicts Plaintiff's allegations that the Officer Defendants sprayed him so excessively that he sustained chemical burns, repeatedly slammed or smashed his arm or shoulder, stabbed him with a switchblade, or repeatedly punched him inside the medical exam room.[8] (*See generally* Def. Exs. D; E). Indeed, based on where inside the cell Defendant Taylor sprayed the chemical agents combined with Plaintiff's use of his food tray to block the spray, it does not appear the spray even made direct contact with his skin, and once Plaintiff exited his cell, no further force was used against him. (*See* Def. Ex. D, 7:43–7:58, 15:30–15:39, 26:43–44:03; *see also generally* Def. Ex. E). On the contrary, Defendants Green and Bias, who shackled and escorted Plaintiff, engaged with him calmly, gently, and respectfully.[9] (*See* Def. Ex. D,

---

[8] Throughout this litigation, Plaintiff has filed numerous motions and notices that have bordered on frivolous and have wasted scarce judicial resources. Upon review of the video evidence, it appears beyond doubt that Plaintiff's allegations in his Amended Complaint were either completely contrived—either intentionally or due to his mental illness—or exceedingly exaggerated. In either case, Plaintiff has engaged this Court and Defendants unnecessarily in protracted litigation for more than three years. As a prolific filer in this Court, Plaintiff is reminded that sanctions may be imposed for knowingly making false material declarations that have no "evidentiary support." *See* Fed. R. Civ. P. 11(b), (c) (providing for sanctions against a party who violates subsection (b)); *see also* 18 U.S.C. § 1623 (providing that a person who knowingly makes a false material declaration to the Court is subject to fine, imprisonment, or both).

[9] After Plaintiff was removed from the shower cell and being escorted to the medical exam room, the camera operator had to make a camera swap because the battery died. Based on Defendants' reports and where Plaintiff and the escorting officers were standing when the first video ends and the second begins, there was no significant lapse in coverage. (*See* Doc. 142-3 at 12–13; Def. Ex. D, 44:03; Def. Ex. E, 0:00–0:05). Regardless, in his Amended Complaint, Plaintiff alleges the offending conduct took place

26:43–29:24, 41:03–44:03; *see also generally* Def. Ex. E).  Because no Officer Defendant used excessive force against Plaintiff, and because the viability of a failure-to-intervene claim depends on the existence of an underlying excessive force claim, the Officer Defendants are entitled to qualified immunity on these claims.

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Medical Defendants' Motion for Summary Judgment (Doc. 141) is **GRANTED**.

2. The Officer Defendants' Motion for Summary Judgment (Doc. 142) is **GRANTED**.

3. Plaintiff's Motion for Summary Judgment (Doc. 144) is **DENIED**.

4. Plaintiff's late Response to the Officer Defendants' Motion for Summary Judgment (Doc. 161), and his emergency notices (Doc. Nos. 160, 162) are **STRICKEN**.

5. The **Clerk** is directed to enter judgment in favor of Defendants, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on March 19, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

---

at his cell or inside the medical exam room.  (*See* Doc. 20 at 13–14).  There was no break in the recording during those times.  (*See generally* Def. Exs. D, E).

Jax-6 3/18
c:
James T. Murzike
Counsel of Record